ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WASHINGTON, D.C.

FILED
NOV 3 - 2006
U.S. COURT OF FEDERAL CLAIMS

**BRIAN ALAN BLAKLEY,**
**d/b/a TCS,**

**PLAINTIFF,**

**v.**

No. 06-749 T

**THE UNITED STATES OF AMERICA,**

**DEFENDANT.**

**COMPLAINT FOR REFUND OF FEDERAL TAXES**

The Plaintiff, Brian Blakley, dba TCS, for his cause of action for a refund of federal taxes paid, complains and alleges as follows:

1. This is an action for recovery of an internal revenue tax erroneously or illegally assessed, collected, and not refunded. The basis of this claim is that the item at issue is a rifle which is not a taxable "firearm," and specifically is not a "machinegun" taxable under Chapter 53 of the Internal Revenue Code.

**PARTIES**

2. Plaintiff is an individual with current address at 8971 – 67th Street, North, Pinellas Park, Florida. Plaintiff's employer identification number is 59-3148857.

3. The Defendant is the United States of America.

## JURISDICTION

4. This Court has jurisdiction of this matter pursuant to Section 1346(a) of Title 28, United States Code, and Section 7422 of the Internal Revenue Code of 1986 (26 U.S.C.), as this is a complaint for the refund of federal taxes paid by the Plaintiff to the Defendant.

## NATIONAL FIREAMS ACT DEFINITIONS

5. The NFA imposes a tax of $200 on the transfer of "firearms." 26 U.S.C. Section 5811. The term "firearm" is narrowly defined to include only certain specified firearms. Section 5845(a). One such taxable firearm is a rifle having a barrel or barrels of less than 16 inches in length. Section 5845(a)(3). A rifle is not otherwise a "firearm" under the NFA and therefore not subject to said tax.

6. As further described below, Plaintiff's invention is a "rifle" under the NFA but is not a "machinegun" under the NFA.

7. Section 5845(c) of the NFA provides the following pertinent definition:

> The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge *to fire only a single projectile through a rifled bore for each single pull of the trigger*, and shall include any such weapon which may be readily restored to fire a fixed cartridge. (Emphasis added.)

8. The above definition of "rifle" is mutually exclusive of the definition of "machinegun" in the NFA, in that (among other reasons) a "machinegun" contains the additional element of requiring that more than one shot be fired by a "single function of the trigger." Section 5845(b).

## FACTS

9. The Plaintiff is duly licensed as a manufacturer of firearms by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), an agency of the United States Department of Justice. Plaintiff's Federal Firearms License number is 1-59-103-07-8E-48218. Plaintiff is also a special (occupational) taxpayer under the National Firearms Act ("NFA"), 26 U.S.C. Section 5801 et seq. (Chapter 53 of the Internal Revenue Code of 1986).

10. Prior to December, 2003, Plaintiff designed and applied for a patent for a new type of rifle, containing an improved firing mechanism, which rifle Plaintiff designated as the model "AR16." This rifle is the subject of patent application 10/424,676, "Trigger Forward Displacement System and Method." As described in paragraph 23 below, once the mechanism is utilized, the rifle continues to fire only a single projectile for each single function of the trigger.

11. In December, 2003, Plaintiff manufactured two functionally identical model AR16 rifles, bearing serial numbers "0000001" and "ATF0001." Both rifles contained the improved mechanism described in paragraph 10 above. As further described below, one rifle - ATF0001 - was submitted to BATFE for the purpose of obtaining an opinion that the rifle was not a "machinegun" within the meaning of the NFA. Contemporaneously, the other rifle, s/n 0000001, was the subject of registration and of a tax-paid transfer, said tax-paid transfer to serve as the basis for jurisdiction in this court if the anticipated BATFE opinion on ATF0001 was adverse to Plaintiff.

**Registration and Transfer of AR16 s/n "0000001"**

12. The NFA is administered by BATFE. NFA "firearms" are required to be registered with BATFE in the National Firearms Registration and Transfer Record. 26 U.S.C. Section 5841. Not knowing in advance whether the BATFE would be of the opinion that the AR16 rifle with serial number 0000001 was an NFA firearm, and given the serious criminal penalties which attend an unregistered NFA firearm (see Section 5861(d)), Plaintiff prudently registered AR16 0000001 with BATFE on ATF Form 2, dated December 21, 2003.

13. On May 14, 2004, Plaintiff filed an Application for Tax Paid Transfer and Registration of Firearm with respect to AR16 0000001 (ATF Form 4, Exhibit 1 to this Complaint). With that application, Plaintiff paid the transfer tax stated thereon of $200.00.

14. On June 2, 2004, BATFE approved the above Application for Tax Paid Transfer and Registration of Firearm and negotiated Plaintiff's $200.00 check for the transfer tax.

**Request for BATFE Opinion on AR 16, s/n "ATF0001"**

15. Contemporaneously with the above-described registration of AR16 0000001, Plaintiff sent ATF0001 to BATFE together with a letter (and a contingent, protective registration form – see below this paragraph) dated December 21, 2003 requesting that BATFE determine administratively that the AR16 (s/n ATF0001) was not a "machinegun" under the NFA. (Exhibit 2.) Plaintiff also enclosed the registration form (ATF Form 2) described above for AR16 ATF0001 with that letter. The letter explained in detail the improved firing mechanism as installed in the Model AR16 rifle, serial number ATF0001, noting that one of its principal design goals was "to ensure that a

single function of the trigger results in a single discharge of the firearm." The letter also sought BATFE's opinion that the item was not a machinegun, in which case the letter asked that the registration form be cancelled. As noted, Plaintiff also submitted the actual AR16 rifle, serial number ATF0001, to the BATFE Firearms Technology Branch.

16. The NFA defines a machinegun in Section 5845(b) as follows:

> The term "machinegun" means *any weapon which shoots*, is designed to shoot, or can be readily restored to shoot, *automatically more than one shot, without manual reloading, by a single function of the trigger*. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. (Emphasis added.)

17. Plaintiff's registration form (ATF Form 2) accompanying the letter of December 21, 2003, contains Box 8(a), which requires the registrant to specify the "Type of Firearm." For this purpose, Plaintiff completed Box 8(a) with the designation of the AR16 rifle (s/n ATF0001) as a "machinegun," subject, however, to specifically stating that this designation was "Subject to Firearms Tech. Branch Determination." (Sending a proposed, prepared ATF Form 2, together with the model itself, is considered standard practice in the industry and is preferred by BATFE.)

18. On September 16, 2004, the Chief, Firearms Technology Branch, responded to Plaintiff's December 21, 2003 letter by concluding in a letter that the AR16, s/n ATF0001, was a "machinegun" as defined in the National Firearms Act, 26 U.S.C. Section 5845(b). (Exhibit 3.)

**Claim for Refund as Result of Adverse BATFE Decision**

19. On November 15, 2004, Plaintiff filed, by certified mail, a Claim for Refund of Transfer Tax Paid with BATFE with respect to AR16 0000001. A complete copy of the Claim for Refund is attached as Exhibit 4.

20. On June 14, 2005, BATFE mailed to counsel for Plaintiff a denial of Plaintiff's Claim for Refund. On September 28, 2005, BATFE mailed an additional copy of the same denial letter by certified mail. A copy of the denial letter is attached as Exhibit 5.

21. In fact and in law, Plaintiff's AR16 0000001 is not a "machinegun" within the meaning of 26 U.S.C. Section 5845(b) in that it does not shoot, nor is it designed to shoot, nor can it be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

22. In fact and in law, Plaintiff's AR16 0000001 does not fulfill any other definition of "machinegun" in 26 U.S.C. Section 5845(b), including but not limited to the definition of a "machinegun" as "a combination of parts designed and intended, for use in converting a weapon into a machinegun…."

23. Plaintiff's AR16 0000001 operates as follows.

a. The operator manually causes a round to be loaded into the firing chamber, where it is held in place by the spring-biased bolt containing a firing pin.

b. When the operator pulls the trigger, the hammer is released, striking the firing pin, which makes contact with the primer of the cartridge, thereby igniting the gunpowder. The resulting expanding gases expel the bullet.

c. One shot is thereby discharged from the rifle.

d. A portion of the expanding gases in the cartridge also forces the bolt and bolt carrier to move toward the rear of the rifle.

e. During that rearward movement of the bolt and bolt carrier, the bolt carrier encounters a cam in the lower receiver (part of Plaintiff's improved firing mechanism), which cam is forced to rotate because of the rearward pressure exerted on it by the bolt carrier.

f. The rotation of the cam in turn forces the trigger into the forward, "unpulled" position again.

g. Upon completion of the loading cycle, the operator's pressure on the trigger then causes the trigger to move from the unpulled position to the pulled position, discharging another, single, shot, again causing the bolt and carrier to move to the rear.

h. This pattern and mechanism repeats so long as the operator by his/her trigger finger pulls the trigger from the forward position to the rearward position at the conclusion of each loading cycle.

i. In this manner each pulling and reseating of the trigger back to its original position results in one single shot being discharged. As a result, only one shot is fired by each single function of the trigger.

24. Defendant's agency, BATFE, has, in several administrative matters, determined that devices functionally indistinguishable from Plaintiff's invention are not "machineguns" under the National Firearms Act.

25. Since Plaintiff's AR16 0000001 is not a "machinegun" as defined in the National Firearms Act, the transfer of said rifle was not legally subject to the above-described transfer tax of $200.00, and Plaintiff is therefore entitled to a refund of $200.00.

26. BATFE's opinion that ATF0001 (functionally identical to AR16 0000001) was a "machinegun" is contrary to law and contrary to BATFE's prior determinations in matters involving devices functionally indistinguishable from the improved firing mechanism in Plaintiff's AR16 0000001.

WHEREFORE, the Plaintiff prays as follows:

1. That this Court grant judgment in favor of Plaintiff, and against Defendant, on Plaintiff's claim for tax refund in the amount of $200.00, or such greater amount as is merited in law.

2. That this Court grant Plaintiff an award of attorney's fees and costs.

3. That this Court grant such other and further relief as is merited.

Respectfully Submitted,

BRIAN A. BLAKLEY, PLAINTIFF

By: [signature]

Robert G. Nath
7th Floor, 8280 Greensboro Drive
McLean, VA 22102
Tel: 703-761-5014
Fax: 703-761-5023

Attorney for Plaintiff

Date signed: 11/2/06

T1380-

OMB No. 1512-0027 (08/31/2004)

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

# APPLICATION FOR TAX PAID TRANSFER AND REGISTRATION OF FIREARM

ATF CONTROL NUMBER

SUBMIT IN DUPLICATE TO:

NATIONAL FIREARMS ACT BRANCH
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, P.O. BOX 73201
CHICAGO [illegible]




1. TYPE [illegible]

☐ $5 [illegible]

Submit [illegible] check [illegible] approp[illegible] to the [illegible] and F[illegible] this ap[illegible] acquir[illegible] ...ed "Natio[illegible] you. ([illegible] 3.)

2a. TRANSFEREE'S NAME AND ADDRESS *(Including tradename, if any) (See instruction 2)*

AWE Technology, Inc.
AWE
8440 Ulmerton Road, #522
Largo, FL 33771

2b. COUNTY
Pinellas

3a. TRANSFEROR'S NAME AND ADDRESS *(Including trade name, if any) (EXECUTORS: See instruction 2k)*

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758

3b. TRANSFEROR'S TELEPHONE NUMBER AND AREA CODE
(727) 560-3623

3c. IF APPLICABLE: DECEDENT'S NAME, ADDRESS, AND DATE OF DEATH

3d. NUMBER, STREET, CITY, STATE AND ZIP CODE OF RESIDENCE *(OR FIREARMS BUSINESS PREMISES)* IF DIFFERENT FROM ITEM 3a.
8440 Ulmerton Road, #522
Largo, FL 33771

The above-named and undersigned transferor hereby makes application as required by Section 5812 of the National Firearms Act to transfer and register the firearm described below to the transferee.

4. DESCRIPTION OF FIREARM *(Complete items a through h)*

| a. NAME AND ADDRESS OF MANUFACTURER AND/OR IMPORTER OF FIREARM | b. TYPE OF FIREARM *(See instruction 1c)* | c. CALIBER, GAUGE OR SIZE *(Specify)* | d. MODEL | LENGTH *(Inches)* e. OF BARREL: | f. OVERALL: | g. SERIAL NUMBER |
|---|---|---|---|---|---|---|
| TCS<br>8440 Ulmerton Road, #522<br>Largo, FL 33771 | Machine Gun* | | AR16 | 16.25" | 34.375" | 0000001 |

h. ADDITIONAL DESCRIPTION OR DATA APPEARING ON FIREARM *(Attach additional sheet if necessary)*

*Subject to Firearms Tech. Branch Determination

RESTRICTED REGISTRATION - Possession limited to continued compliance with provisions of Public Law 99-308

5. TRANSFEREE'S FEDERAL FIREARMS LICENSE *(If any)* *(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 6L | 08142 |

6. TRANSFEREE'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 06-1699988 | 02 Mfr. |

7. TRANSFEROR'S FEDERAL FIREARMS LICENSE *(If any)* *(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 5E | 48218 |

8. TRANSFEROR'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 59-3148857 | 02 Mfr. |

UNDER PENALTIES OF PERJURY, I DECLARE that I have examined this application, and to the best of my knowledge and belief it is true, correct and complete, and that the transfer of the described firearm to the transferee and receipt and possession of it by the transferee are not prohibited by the provisions of Chapter 44, Title 18, United States Code; Chapter 53, Title 26, United States Code; or Title VII of the Omnibus Crime Control and Safe Streets Act, as amended; or any provisions of State or local law.

9. CONSENT TO DISCLOSURE OF INFORMATION TO TRANSFEREE *(See instruction 8).* I DO OR DO NOT *(circle one)* AUTHORIZE ATF TO PROVIDE INFORMATION RELATING TO THIS APPLICATION TO THE ABOVE-NAMED TRANSFEREE.

| 10. SIGNATURE OF TRANSFEROR *(Or authorized official)* | 11. NAME AND TITLE OF AUTHORIZED OFFICIAL *(Print or type)* | 12. DATE |
|---|---|---|
| [signature] | Brian A. Blakley, Owner | 5/14/2004 |

THE SPACE BELOW IS FOR THE USE OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

BY AUTHORITY OF THE DIRECTOR, THIS APPLICATION HAS BEEN EXAMINED, AND THE TRANSFER AND REGISTRATION OF THE FIREARM DESCRIBED HEREIN AND THE INTERSTATE MOVEMENT OF THAT FIREARM, WHEN APPLICABLE, TO THE TRANSFEREE ARE:

STAMP DENOMINATION

☐ APPROVED *(with the following conditions, if any)*

☐ DISAPPROVED *(For the following reasons)*

SIGNATURE OF AUTHORIZED ATF OFFICIAL: [signature] Denise Henson

DATE: JUN 02 2004

ATF F 4 (5320.4) (8-2001) PREVIOUS EDITIONS ARE OBSOLETE

EXHIBIT 1

## TRANSFEREE INFORMATION

The following questions must be answered by any transferee who is not a Federal firearms licensee or government agency. The transferee shall give full details on a separate sheet for all "YES" answers. *(See instruction 2d)*

| 13. ARE YOU: | YES | NO |
|---|---|---|
| a. Charged by information or under indictment in any court for a crime punishable by imprisonment for a term exceeding one year? | | |
| b. A fugitive from justice? | | |
| c. An alien who is illegally or unlawfully in the United States? | | |
| d. Under 21 years of age? | | |
| e. An unlawful user of or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | |
| f. Subject to a court order restraining you from harassing, stalking or threatening an intimate partner or child of such partner? | | |

| 14. HAVE YOU: | YES | NO |
|---|---|---|
| a. Been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence? | | |
| b. Been discharged from the armed forces under dishonorable conditions? | | |
| c. Been adjudicated mentally defective or been committed to a mental institution? | | |
| d. Renounced your United States citizenship? | | |
| e. Been convicted in any court of a misdemeanor crime of domestic violence? This includes any misdemeanor conviction involving the use or attempted use of physical force committed by a current or former spouse, parent, or guardian of the victim, or by a person with a similar relationship with the victim. | | |

### 15. TRANSFEREE'S CERTIFICATION *(See instruction 2e)*

I, ______________________________, have a reasonable necessity to
*(Name of Transferee)*
possess the machinegun, short-barreled rifle, short-barreled shotgun, or destructive device described on this application for the following reason(s) ______________________________

______________________________

and my possession of the device or weapon would be consistent with public safety (18 U.S.C. 922(b) (4) and 27 CFR 178.98).

UNDER PENALTIES OF PERJURY, I declare that I have examined this application and the documents submitted in support thereof, and to the best of my knowledge and belief it is true, correct and complete.

______________________________ ______________
*(Signature of Transferee)* *(Date)*

### 16. PHOTOGRAPH

AFFIX
RECENT PHOTOGRAPH HERE
*(Approximately 2" x 2")*
*(See Instruction 2f.)*

### 17. LAW ENFORCEMENT CERTIFICATION *(See instruction 2e)*

I certify that I am the chief law enforcement officer of the organization named below having jurisdiction in the area of residence of

______________________________. I have no information indicating that the transferee will use the firearm or device
*(Name of Transferee)*
described on this application for other than lawful purposes. I have no information that the receipt or possession of the firearm or device described in item 4 would be place the transferee in violation of State or local law.

______________________________ ______________
*(Signature and Title of Chief Law Enforcement Officer)* *(Date)*

______________________________
*(Organization and Street Address)*

______________________________ ______________
*(County)* *(Telephone Number)*

MAY 17 2004

### IMPORTANT INFORMATION FOR CURRENTLY REGISTERED FIREARMS

If this registration document evidences the current registration of the firearm described on it, please note the following information.

**ESTATE PROCEDURES:** For procedures regarding the transfer of firearms in an estate resulting from the death of the registrant identified in item 2a, the executor should contact the NFA Branch, Bureau of Alcohol, Tobacco and Firearms, Washington, DC 20226.

**CHANGE OF ADDRESS:** Unless currently licensed under the Gun Control Act, the registrant shall notify the NFA Branch, Bureau of Alcohol, Tobacco and Firearms, Washington, DC 20226, in writing, of any change to the address in item 2a.

**CHANGE OF DESCRIPTION:** The registrant shall notify the NFA Branch, Bureau of Alcohol, Tobacco and Firearms, Washington, DC 20226, in writing, of any change to the description of the firearm in item 4.

**INTERSTATE MOVEMENT:** If the firearm identified in item 4 is a machinegun, short-barreled rifle, short-barreled shotgun, or destructive device, the registrant may be required by 18 U.S.C. § 922(a)(4) to obtain permission from ATF prior to any transportation in interstate or foreign commerce.

**RESTRICTIONS ON POSSESSION:** Any restriction *(see approval block on face of form)* on the possession of the firearm identified in item 4 continues with the further transfer of the firearm.

**PERSONS PROHIBITED FROM POSSESSING FIREARMS:** If the registrant becomes prohibited by 18 U.S.C. § 922 from possessing a firearm, the registrant shall notify the NFA Branch, Bureau of Alcohol, Tobacco and Firearms, Washington, DC 20226, in writing, immediately upon becoming prohi-bited for guidance on the disposal of the firearm.

**PROOF OF REGISTRATION:** This approved application is the registrant's proof of registration and it shall be made available to any ATF officer upon request.

**Brian A. Blakley, d/b/a TCS**
**P.O. Box 5765, Clearwater, FL 33758-5765**
**brian@blakley.info • (727) 560-3623**

12-21-2003

Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives
650 Massachusetts Avenue, Room 6450
Washington, DC 20226

Chief Nixon:

I am writing to request an opinion regarding the legal status of a new firearm design. The document that follows will describe the design of the proposed firearm and is accompanied by drawings to help clarify the meaning of the description.

I have been advised by competent legal counsel that the firearm design described herein is not a machine gun by any definition under Federal Law. Absent some communication from you to the contrary, or some communication which indicates that a period of time in excess of 90 days is required to review this sample, it would be my intent to manufacture the herein described firearm as a Title I firearm to be sold in the means and channels of commerce customary to such an item.

The proposed firearm is mechanically similar to an AR15 style firearm but is a new design that I will simply refer to as the *new firearm* throughout the remainder of this document. The similarity to an AR15 style firearm is mentioned to help one who is familiar with the AR15 to better understand the drawings.

The *new firearm* incorporates a means whereby the rearward movement of the bolt carrier (as a result of the firearm being discharged) causes the rotation of a cam that forces the rear of the trigger downward, thereby pivoting the trigger about it's axis, effectively moving the external portion of the trigger forward into the un-pulled position against the operator's trigger finger force. The cam is designed in such a way that after being rotated and forcing the trigger forward into the un-pulled position, the trigger is statically held there during the rearward and then forward travel of the bolt carrier. As the bolt carrier returns to battery, the trailing edge of the bolt carrier again engages the cam and rotates the cam in the opposite direction, which ceases the cams engagement with the trigger extension thereby allowing the operator to pull the trigger again. It is important to note that no discharge of the firearm occurs during the displacement of the trigger by the cam. In fact, the cam absolutely precludes discharge of the firearm during its action.

The primary benefit of the *new firearm* is that it is physically impossible to pull the trigger faster than it is mechanically safe to do so. Further, it is possible to pull the trigger as soon as it is mechanically safe to do so affording the operator an increased rate of fire while preserving the principle of "one round discharged per function of the trigger". With the AR15 rifle (from which the *new firearm* evolved) it is mechanically possible to pull the trigger before the point when the bolt carrier has reached battery but after the point when

**EXHIBIT 2**

the disconnector would prevent the hammer from falling. In the best possible scenario this results in a light primer hit and a stoppage, in the worst-case scenario this could result in an out of battery discharge.

Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm*:

Fig. 1 Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun.

Fig. 2 Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position.

Fig. 3 Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger.

Several components of the *new firearm* are essentially identical to an AR15 style firearm. The components that are <u>newly designed</u> are:

Lower receiver, hammer, trigger, disconnector, bolt carrier, trigger extension, and cam.

The principal differences between those components in an AR15 style firearm and those in the *new firearm* are:

Lower receiver — Hole provided for pivot pin for cam. Hole is not in the same location as the auto-sear hole in an M16 receiver. It is positioned further forward so as to preclude use of M16 fire control components. It is also larger in diameter than an M16 auto-sear hole.

Hammer — The hammer is of a bobbed style similar to those found in some 9mm variants and as seen in "low mass" hammers. The bobbed hammer provides additional room in the rear of the lower receiver for the cam and trigger extension. The notch on the face of the hammer is retained in order to allow binding with the firing pin if the cam and disconnector were removed.

Trigger — The trigger has a disconnector spring pocket that is further forward than in an AR15 to accommodate the redesigned disconnector, which provides additional room in the rear of the receiver for the cam and trigger extension.

Disconnector — The disconnector has no "tail" at all compared to an AR15 disconnector, and has a spring notch that is further forward corresponding to the pocket in the trigger. The mechanical function of the disconnector is unchanged from the AR15.

Bolt Carrier — The bolt carrier possesses a "machined away" area under the firing pin collar as the AR15 does (to preclude a runaway if the disconnector and cam are removed), but has a trailing rear surface that extends further forward than most AR15 carriers,

but not so far forward as an M16. The trailing rear surface of the bolt carrier in the *new firearm* is specifically designed not to be able to trip an M16 auto-sear, and to preserve the safety benefits of an exposed firing pin collar as in the AR15.

| | |
|---|---|
| Trigger Extension | The trigger extension bridges the gap between the cam and the rear of the internal portion of the trigger. This allows the rotation of the cam to transmit displacing force to the trigger. |
| Cam | The cam is designed so as to be rotated toward the rear on rearward travel of the bolt carrier and in doing so forces the trigger forward by means of contact with the trigger extension. Subsequently, upon the bolt carrier returning to battery, the cam is rotated forward thereby ceasing its force against the trigger extension allowing the operator to pull the trigger again. |

Principle design goals were:

- To ensure that a single function of the trigger results in a single discharge of the firearm.
- Enhancement of the shooting experience and of the safety of the firearm.
- To make the *new firearm* at least as difficult to be illegally converted into a machine gun as it's AR15 predecessor, if not more difficult.

You are requested to confirm cousel's opinion that the *new firearm* is not legally a machine gun under Federal Law. Every effort has been expended in designing the new firearm to ensure that it does not run afoul of any Federal machine gun definitions. In the event that you find the enclosed firearm to be a machine gun, an executed ATF Form 2 is enclosed in a separate envelope for this firearm. If you determine the firearm is not a machine gun, please destroy the Form 2. If you determine the firearm is a machine gun, please forward the Form 2 to the NFA Branch for processing.

Thank you for your time in reviewing this request.

Sincerely,

Brian A. Blakley

Enclosure: AR16 firearm serial number ATF0001
Completed ATF 5320.2 (Form 2) in separate envelope
Figures 1 through 3

"AR16" TM (Trademark) Brian A. Blakley
Design of enclosed firearm is Patent Pending

FIG 1







FIG 2

FIG 3



OMB No. 1512 - 0025 (05/31/2004)

## DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

# NOTICE OF FIREARMS MANUFACTURED OR IMPORTED

*(Complete in duplicate - See Instructions)*

FILE TO: NATIONAL FIREARMS ACT BRANCH, BUREAU OF ATF, WASHINGTON, DC 20226

**The undersigned hereby serves notice of the manufacture, reactivation, or importation of firearms as required by § 5841 of the National Firearms Act, Title 26, U.S.C. Chapter 53.**

1. TYPE OF NOTICE
   a. FIREARMS ON THIS NOTICE ARE: *(Check one)*
   - [x] MANUFACTURED
   - [ ] REACTIVATED
   - [ ] IMPORTED *(complete b & c)*

   b. PERMIT NUMBER: N/A
   c. EXPIRATION DATE: N/A

2. NAME AND ADDRESS *(Include trade name, if any)*

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758-5765

- [x] SOLE PROPRIETOR
- [ ] PARTNERSHIP
- [ ] CORPORATION

3. FEDERAL FIREARMS LICENSE NUMBER: 1-59-103-07-5E-48218

4. EMPLOYER IDENTIFICATION NUMBER AND CLASS: 59-3148857 02

5. NUMBER OF FIREARMS COVERED BY THIS NOTICE: 1

6. TELEPHONE NUMBER *(Include area code)*: 727-560-3623

7. DATE OF MANUFACTURE, REACTIVATION OR RELEASE FROM CUSTOMS: 12/21/2003

8. DESCRIPTION OF FIREARM(S)

| TYPE OF FIREARM *(See Instruction 1c)* a | ADDITIONAL DESCRIPTION *(See Instruction 3e)* b | CALIBER GAUGE OR SIZE c | MODEL d | LENGTH (In.) BARREL e | LENGTH (In.) OVERALL f | SERIAL NUMBER *(See Instruction 3d)* g |
|---|---|---|---|---|---|---|
| Machine Gun* | *Subject to Firearms Tech. Branch Determination | .223 | AR16 | 16.25" | 34.375" | 0000001 |

RESTRICTED REGISTRATION - Possession limited to continued compliance with provisions of Public Law 99-308

JAN 2 2 2004

Darren Henson

**UNDER PENALTIES OF PERJURY, I DECLARE that I have examined this notice of firearms manufactured, reactivated or imported and, to the best of my knowledge and belief, it is true, correct and complete.**

9. SIGNATURE OF MANUFACTURER OR IMPORTER *(or authorized official)*: B. A. Blakley

10. NAME AND TITLE OF AUTHORIZED OFFICIAL: Brian A. Blakley, Owner

11. FILING DATE: 12/21/2003

ATF USE - RESTRICTIONS *(If any)*
- [ ] IMPORTED UNDER 26 U.S.C. § 5844 FOR USE (A) BY A GOVERNMENT AGENCY, (2) FOR SCIENTIFIC OR RESEARCH PURPOSES OR (3) AS A MODEL OR SALES SAMPLE. *(NOTE: machineguns are not subject to these restrictions.)*
- [ ] MACHINEGUN MANUFACTURED OR IMPORTED AFTER MAY 19, 1986 *(18 U.S.C. § 922(o))*

NFA CONTROL NUMBER

RECEIPT DATE

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

SEP 16 2004

903050:RV
3311/2004-273

www.atf.gov

Mr. Brian A. Blakely
P.O. Box 5765
Clearwater, FL 33758-3623

Dear Mr. Blakely:

This refers to your correspondence, including accompanying illustrations and other items, and firearm sample submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your inquiry, you requested an evaluation of the design of this new firearm prior to manufacturing it. Specifically, you asked FTB to determine whether this firearm would be classified as a machinegun.

The sample you submitted is an AR 15 clone featuring a new design for the firing mechanism. This design would enable the firing mechanism to operate in the following manner as soon as the trigger is pulled:

- The hammer falls, firing a shot.
- The hammer is recocked when the bolt comes to the rear.
- When the bolt travels forward, it contacts the cam (new design: see illustration).
- The forward pressure of the bolt against the cam forces the trigger forward.
- The continuous steady pressure on the trigger from the trigger pull causes the trigger to travel rearward and releases the cocked hammer, enabling firing to continue.
- The weapon ceases firing when the firing finger is physically removed from the trigger. (If the steady pressure of the trigger pull is not released, the weapon will continue to fire until the magazine is empty or a malfunction occurs.)

As defined in the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), the term "machinegun" designates, in part, "... any weapon which will or is designed or can be readily restored to fire more than one shot automatically without manual reloading by the single function of the trigger."

Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun," being capable of firing automatically with a single function of the trigger. Our Branch reached this finding because it is evident

**EXHIBIT 3**

Mr. Brian A. Blakely

that from the moment of the application of trigger pressure--and as long as rearward pressure is applied to the trigger--the firearm continues to fire until the firing finger is removed; this firing takes place regardless of the cam's pushing the trigger forward.

With regard to the ATF Form 2 (Notice of Firearms Manufactured or Imported) that was submitted with your sample mechanism, FTB has forwarded it to ATF's NFA Branch.

Also, we are enclosing a copy of a photograph you submitted with your correspondence.

We trust that the foregoing has been responsive to your inquiry. If you have further questions concerning this matter, please contact us.

Sincerely yours,

for Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

FIG 3

FIG 3




Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm:*

Fig. 1 Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun.

Fig. 2 Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position.

Fig. 3 Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger.

**ROBERT G. NATH, PLLC**
ATTORNEY AT LAW
SUITE 700
2010 CORPORATE RIDGE
MCLEAN, VIRGINIA 22102

ADMITTED IN:
VA, MD, DC

TEL: 703-827-8060
FAX: 703-827-8061
EMAIL: Robertnath@Rnathlaw.com

November 15, 2004

Certified Mail – Return Receipt Requested

Headquarters
Bureau of Alcohol, Tobacco & Firearms
650 Massachusetts Avenue, NW
Room 5440
Washington, DC 20226

Re: Brian Alan Blakley, EIN 59-3148857, Firearms License: 159103-07-5E-48218
**Claim for Refund of Transfer Tax Paid**
Form 5620.8 and this letter

Ladies and Gentlemen:

This firm represents Mr. Brian Alan Blakley with respect to his federal firearms tax matters. A power of attorney is enclosed.

Also enclosed please find Mr. Blakley's Form 5620.8 for refund of taxes paid. We anticipate that BATF will reject this claim for reasons stated in the claim and attachments. Please advise of any action taken on this claim.

The following information is also presented in support of this claim.

1. This claim is filed under the provisions of 27 CFR Part 179.81, 27 CFR Part 179.191, and 26 CFR (Regulations governing claims for tax refund).

2. This claim is for a refund of tax paid on the transfer of a firearm.

3. Name and address of Claimant:

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758

4. Employer Identification Number: 59-3148857

COPY

EXHIBIT 4

5. Transferor's federal firearms license: 159103-07-5E-48218

6. Type of Tax: Excise tax on transfer of firearm, 26 USC Section 5811

7. Amount of tax paid and claimed for refund: $200.00

8. Date of Payment: May 14, 2004

9. Basis of Claim:

On May 14, 2004, claimant duly filed ATF Form 4 (Application for Tax Paid Transfer and Registration of Firearm) with the Bureau of Alcohol, Tobacco and Firearms ("BATF"), and paid the $200.00 transfer tax stated thereon (See attached copy of ATF Form 4, incorporated by reference as Exhibit A). On June 2, 2004, BATF approved the transfer, as shown in Exhibit A.

The transfer was of an AR16 firearm with a new design. The technical details of the transferred firearm are described in a letter dated December 21, 2003 from Brian A. Blakley, d/b/a TCS, the manufacturer of the AR16. See Exhibit B, incorporated by reference. In Exhibit A, the firearm is described as a "machinegun," and this designation was specifically made "Subject to Firearms Tech. Branch Determination."

On September 16, 2004, the Chief, Firearms Technology Branch (FTB) responded to claimant's December 21, 2003 letter by concluding that the firearm was a "machinegun" as defined in the National Firearms Act, 26 U.S.C. Section 5845(b). Exhibit C. This letter states in pertinent part:

"Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun,'…."

Claimant expects and desires that this claim for refund be examined by the Bureau of Alcohol, Tobacco and Firearms, including additional review by the FTB. Claimant believes the firearm is not a "machinegun" but expects that BATF will reject the claim for refund based on FTB's determination, in its letter of September 16, 2004, that the firearm is a "machinegun."

However, the firearm in question is not in fact or in law a "machinegun" within the definitions of that term contained in Section 5845(b) of the National Firearms Act of 1934 (Internal Revenue Code Section 5845(b)), and Section 921(a)(23) of Title 18, United States Code. Accordingly, claimant is entitled to a refund of $200.00, since the

transfer of the firearm was not taxable as it was not the transfer of a "machinegun" in fact or in law.

Please advise of any action taken on this claim for refund. Thank you for your attention.

Sincerely yours,

Robert G. Nath

cc: Mr. Brian Blakley

Form **2848**
(Rev. March 2004)
Department of the Treasury
Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 15[illegible]-0150
For IRS Use Only
Received by:
Name
Telephone
Function
Date

**Part I** **Power of Attorney**

**Caution:** *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

Taxpayer name(s) and address
BRIAN A. BLAKLEY DBA TCS
PO BOX 5765
CLEARWATER FL 33758

Social security number(s)

Employer identification number
59-3[illegible]

Daytime telephone number

Plan number (if applicable)

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

Name and address
Robert G. Nath
2010 Corporate Ridge, Suite 700
McLean, Virginia 22102

CAF No. 5008-15575R
Telephone No. 703-827-8060
Fax No. 703-827-806[illegible]
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

Name and address

CAF No.
Telephone No.
Fax No.
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

Name and address

CAF No.
Telephone No.
Fax No.
Check if new: Address ☐ Telephone No. ☐ Fax No. ☐

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Excise | ATF 5320.5 | 1/1/2004 thru 12/31/2004 |
| | | |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF** ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ........................

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here ____________ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

**For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.**
ISA
STF FED4875F.1

Form 2848 (Rev. 3-2004) Page 2

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

a If you also want the second representative listed to receive a copy of notices and communications, check this box ▶ ☐

b If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

[signature] — Signature | 11-15-2004 — Date | Owner/Self — Title (if applicable)

Brian A. Blakley — Print Name | PIN Number | Brian A. Blakley — Print name of taxpayer from line 1 if other than individual

Signature | Date | Title (if applicable)

Print Name | PIN Number

**Part II Declaration of Representative**

***Caution:** Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation — Insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | VA | [signature] | 11-15-2004 |
| | | | |
| | | | |

STF FED4675F.2

Form 2848 (Rev. 3-2004)

T 138 J1

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

OMB No. 1512-0027 (08/31/2004)

# APPLICATION FOR TAX PAID TRANSFER AND REGISTRATION OF FIREARM

ATF CONTROL NUMBER

SUBMIT IN DUPLICATE TO:

NATIONAL FIREARMS ACT BRANCH
BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS, P.O. BOX 73201
CHICAGO

1. TYPE ... a)
☐ $5 ...

Submit ... check ... approp... to the B... and F... this ap... acquir... "Natio... you. (... 3.)




2a. TRANSFEREE'S NAME AND ADDRESS *(Including tradename, if any) (See instruction 2)*

AWE Technology, Inc.
AWE
8440 Ulmerton Road, #522
Largo, FL 33771

2b. COUNTY
Pinellas

3a. TRANSFEROR'S NAME AND ADDRESS *(Including trade name, if any) (EXECUTORS: See instruction 2k)*

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758

3b. TRANSFEROR'S TELEPHONE NUMBER AND AREA CODE
(727) 560-3623

3c. IF APPLICABLE: DECEDENT'S NAME, ADDRESS, AND DATE OF DEATH

3d. NUMBER, STREET, CITY, STATE AND ZIP CODE OF RESIDENCE *(OR FIREARMS BUSINESS PREMISES)* IF DIFFERENT FROM ITEM 3a.
8440 Ulmerton Road, #522
Largo, FL 33771

The above-named and undersigned transferor hereby makes application as required by Section 5812 of the National Firearms Act to transfer and register the firearm described below to the transferee.

4. DESCRIPTION OF FIREARM *(Complete items a through h)*

a. NAME AND ADDRESS OF MANUFACTURER AND/OR IMPORTER OF FIREARM
TCS
8440 Ulmerton Road, #522
Largo, FL 33771

b. TYPE OF FIREARM *(See instruction 1c)*
Machine Gun*

c. CALIBER, GAUGE OR SIZE *(Specify)*

d. MODEL
AR16

LENGTH *(inches)* e. OF BARREL: 16.25" f. OVERALL: 34.375"

g. SERIAL NUMBER
0000001

h. ADDITIONAL DESCRIPTION OR DATA APPEARING ON FIREARM *(Attach additional sheet if necessary)*
*Subject to Firearms Tech. Branch Determination

RESTRICTED REGISTRATION - Possession limited to ... with transfer of Public Law 99-308

5. TRANSFEREE'S FEDERAL FIREARMS LICENSE *(If any)*
*(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 6L | 08142 |

6. TRANSFEREE'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 06-1699988 | 02 Mfr. |

7. TRANSFEROR'S FEDERAL FIREARMS LICENSE *(If any)*
*(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 5E | 48218 |

8. TRANSFEROR'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 59-3148857 | 02 Mfr. |

UNDER PENALTIES OF PERJURY, I DECLARE that I have examined this application, and to the best of my knowledge and belief it is true, correct and complete, and that the transfer of the described firearm to the transferee and receipt and possession of it by the transferee are not prohibited by the provisions of Chapter 44, Title 18, United States Code; or Title VII of the Omnibus Crime Control and Safe Streets Act, as amended; or any provisions of State or local law.

9. CONSENT TO DISCLOSURE OF INFORMATION TO TRANSFEREE *(See instruction 8)*. I DO OR DO NOT *(circle one)* AUTHORIZE ATF TO PROVIDE INFORMATION RELATING TO THIS APPLICATION TO THE ABOVE-NAMED TRANSFEREE.

10. SIGNATURE OF TRANSFEROR *(Or authorized official)*
[signature]

11. NAME AND TITLE OF AUTHORIZED OFFICIAL *(Print or type)*
Brian A. Blakley, Owner

12. DATE
5/14/2004

THE SPACE BELOW IS FOR THE USE OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

BY AUTHORITY OF THE DIRECTOR, THIS APPLICATION HAS BEEN EXAMINED, AND THE TRANSFER AND REGISTRATION OF THE FIREARM DESCRIBED HEREIN AND THE INTERSTATE MOVEMENT OF THAT FIREARM, WHEN APPLICABLE, TO THE TRANSFEREE ARE:

STAMP DENOMINATION

☐ APPROVED *(with the following conditions, if any)*

☐ DISAPPROVED *(For the following reasons)*

SIGNATURE OF AUTHORIZED ATF OFFICIAL
[signature]

DATE
JUN 02 2004

ATF F 4 (5320.4) (8-2001) PREVIOUS EDITIONS ARE OBSOLETE

Exhibit A

TECHCOM SYSTEMS
Ph 727-560-3623
P O Box 2878
Pinellas Park, Fl 33780-2878

73201 (5) 568 1

4188 1

63-466/631

DATE May 14, 2004

Pay to the order of Bureau of Alcohol Tobacco and Firearms $ 200.00

Two Hundred & zero/100 DOLLARS

AMSOUTH BANK
THE RELATIONSHIP PEOPLE

AR16

FOR Transfer Tax S/N: 0000001

⑈004188⑈ ⑆063104668⑆ 79653781 99⑈ ⑈0000020000⑈

**Brian A. Blakley, d/b/a TCS**
**P.O. Box 5765, Clearwater, FL 33758-5765**
**brian@blakley.info . (727) 560-3623**

**12-21-2003**

Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives
650 Massachusetts Avenue, Room 6450
Washington, DC 20226

Chief Nixon:

I am writing to request an opinion regarding the legal status of a new firearm design. The document that follows will describe the design of the proposed firearm and is accompanied by drawings to help clarify the meaning of the description.

I have been advised by competent legal counsel that the firearm design described herein is not a machine gun by any definition under Federal Law. Absent some communication from you to the contrary, or some communication which indicates that a period of time in excess of 90 days is required to review this sample, it would be my intent to manufacture the herein described firearm as a Title I firearm to be sold in the means and channels of commerce customary to such an item.

The proposed firearm is mechanically similar to an AR15 style firearm but is a new design that I will simply refer to as the *new firearm* throughout the remainder of this document. The similarity to an AR15 style firearm is mentioned to help one who is familiar with the AR15 to better understand the drawings.

The *new firearm* incorporates a means whereby the rearward movement of the bolt carrier (as a result of the firearm being discharged) causes the rotation of a cam that forces the rear of the trigger downward, thereby pivoting the trigger about it's axis, effectively moving the external portion of the trigger forward into the un-pulled position against the operator's trigger finger force. The cam is designed in such a way that after being rotated and forcing the trigger forward into the un-pulled position, the trigger is statically held there during the rearward and then forward travel of the bolt carrier. As the bolt carrier returns to battery, the trailing edge of the bolt carrier again engages the cam and rotates the cam in the opposite direction, which ceases the cams engagement with the trigger extension thereby allowing the operator to pull the trigger again. It is important to note that no discharge of the firearm occurs during the displacement of the trigger by the cam. In fact, the cam absolutely precludes discharge of the firearm during its action.

The primary benefit of the *new firearm* is that it is physically impossible to pull the trigger faster than it is mechanically safe to do so. Further, it is possible to pull the trigger as soon as it is mechanically safe to do so affording the operator an increased rate of fire while preserving the principle of "one round discharged per function of the trigger". With the AR15 rifle (from which the *new firearm* evolved) it is mechanically possible to pull the trigger before the point when the bolt carrier has reached battery but after the point when

Exhibit A

the disconnector would prevent the hammer from falling. In the best possible scenario this results in a light primer hit and a stoppage, in the worst-case scenario this could result in an out of battery discharge.

Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm*:

| | |
|---|---|
| Fig. 1 | Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun. |
| Fig. 2 | Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position. |
| Fig. 3 | Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger. |

Several components of the *new firearm* are essentially identical to an AR15 style firearm. The components that are newly designed are:

Lower receiver, hammer, trigger, disconnector, bolt carrier, trigger extension, and cam.

The principal differences between those components in an AR15 style firearm and those in the *new firearm* are:

| | |
|---|---|
| Lower receiver | Hole provided for pivot pin for cam. Hole is not in the same location as the auto-sear hole in an M16 receiver. It is positioned further forward so as to preclude use of M16 fire control components. It is also larger in diameter than an M16 auto-sear hole. |
| Hammer | The hammer is of a bobbed style similar to those found in some 9mm variants and as seen in "low mass" hammers. The bobbed hammer provides additional room in the rear of the lower receiver for the cam and trigger extension. The notch on the face of the hammer is retained in order to allow binding with the firing pin if the cam and disconnector were removed. |
| Trigger | The trigger has a disconnector spring pocket that is further forward than in an AR15 to accommodate the redesigned disconnector, which provides additional room in the rear of the receiver for the cam and trigger extension. |
| Disconnector | The disconnector has no "tail" at all compared to an AR15 disconnector, and has a spring notch that is further forward corresponding to the pocket in the trigger. The mechanical function of the disconnector is unchanged from the AR15. |
| Bolt Carrier | The bolt carrier possesses a "machined away" area under the firing pin collar as the AR15 does (to preclude a runaway if the disconnector and cam are removed), but has a trailing rear surface that extends further forward than most AR15 carriers, |

| | |
|---|---|
| | but not so far forward as an M16. The trailing rear surface of the bolt carrier in the *new firearm* is specifically designed not to be able to trip an M16 auto-sear, and to preserve the safety benefits of an exposed firing pin collar as in the AR15. |
| Trigger Extension | The trigger extension bridges the gap between the cam and the rear of the internal portion of the trigger. This allows the rotation of the cam to transmit displacing force to the trigger. |
| Cam | The cam is designed so as to be rotated toward the rear on rearward travel of the bolt carrier and in doing so forces the trigger forward by means of contact with the trigger extension. Subsequently, upon the bolt carrier returning to battery, the cam is rotated forward thereby ceasing its force against the trigger extension allowing the operator to pull the trigger again. |

Principle design goals were:

- To ensure that a single function of the trigger results in a single discharge of the firearm.
- Enhancement of the shooting experience and of the safety of the firearm.
- To make the *new firearm* at least as difficult to be illegally converted into a machine gun as it's AR15 predecessor, if not more difficult.

You are requested to confirm cousel's opinion that the *new firearm* is not legally a machine gun under Federal Law. Every effort has been expended in designing the new firearm to ensure that it does not run afoul of any Federal machine gun definitions. In the event that you find the enclosed firearm to be a machine gun, an executed ATF Form 2 is enclosed in a separate envelope for this firearm. If you determine the firearm is not a machine gun, please destroy the Form 2. If you determine the firearm is a machine gun, please forward the Form 2 to the NFA Branch for processing.

Thank you for your time in reviewing this request.

Sincerely,

Brian A. Blakley

Enclosure: AR16 firearm serial number ATF0001
Completed ATF 5320.2 (Form 2) in separate envelope
Figures 1 through 3

"AR16" TM (Trademark) Brian A. Blakley
Design of enclosed firearm is Patent Pending

FIG 1







FIG 2

FIG 3



U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

SEP 16 2004

903050:RV
3311/2004-273

www.atf.gov

Mr. Brian A. Blakely
P.O. Box 5765
Clearwater, FL 33758-3623

Dear Mr. Blakely:

This refers to your correspondence, including accompanying illustrations and other items, and firearm sample submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your inquiry, you requested an evaluation of the design of this new firearm prior to manufacturing it. Specifically, you asked FTB to determine whether this firearm would be classified as a machinegun.

The sample you submitted is an AR 15 clone featuring a new design for the firing mechanism. This design would enable the firing mechanism to operate in the following manner as soon as the trigger is pulled:

- The hammer falls, firing a shot.
- The hammer is recocked when the bolt comes to the rear.
- When the bolt travels forward, it contacts the cam (new design: see illustration).
- The forward pressure of the bolt against the cam forces the trigger forward.
- The continuous steady pressure on the trigger from the trigger pull causes the trigger to travel rearward and releases the cocked hammer, enabling firing to continue.
- The weapon ceases firing when the firing finger is physically removed from the trigger. (If the steady pressure of the trigger pull is not released, the weapon will continue to fire until the magazine is empty or a malfunction occurs.)

As defined in the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), the term "machinegun" designates, in part, "… any weapon which will or is designed or can be readily restored to fire more than one shot automatically without manual reloading by the single function of the trigger."

Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun," being capable of firing automatically with a single function of the trigger. Our Branch reached this finding because it is evident

Exhibit C

that from the moment of the application of trigger pressure--and as long as rearward pressure is applied to the trigger--the firearm continues to fire until the firing finger is removed; this firing takes place regardless of the cam's pushing the trigger forward.

With regard to the ATF Form 2 (Notice of Firearms Manufactured or Imported) that was submitted with your sample mechanism, FTB has forwarded it to ATF's NFA Branch.

Also, we are enclosing a copy of a photograph you submitted with your correspondence.

We trust that the foregoing has been responsive to your inquiry. If you have further questions concerning this matter, please contact us.

Sincerely yours,

for Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

FIG 3




FIG 3




Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm:*

Fig. 1 Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun.

Fig. 2 Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position.

Fig. 3 Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger.

Form **2848** (Rev. March 2004) Department of the Treasury Internal Revenue Service

# Power of Attorney and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name
Telephone
Function
Date

**Part I** **Power of Attorney**

**Caution:** *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| BRIAN A. BLAKLEY DBA TCS<br>PO BOX 5765<br>CLEARWATER FL 33758 | | 59-314... |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Robert G. Nath<br>2010 Corporate Ridge, Suite 700<br>McLean, Virginia 22102 | CAF No. 5005-13575...<br>Telephone No. 703-827-8060<br>Fax No. 703-827-806...<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Name and address | CAF No. ............<br>Telephone No. ............<br>Fax No. ............<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Name and address | CAF No. ............<br>Telephone No. ............<br>Fax No. ............<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Excise | ATF 5320.5 | 1/1/2004 thru 12/31/2004 |
| | | |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF** . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ..........

..........

..........

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here __________ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

**For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.** Form **2848** (Rev. 3-2004)

ISA
STF FED4879F.1

COPY

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

a If you also want the second representative listed to receive a copy of notices and communications, check this box ▶ ☐

b If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

[signature] Signature — 11-15-2006 Date — Owner/Self Title (if applicable)

Brian A. Blakley Print Name — PIN Number — Brian A. Blakley Print name of taxpayer from line 1 if other than individual

Signature — Date — Title (if applicable)

Print Name — PIN Number

**Part II Declaration of Representative**

*Caution: Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
b Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
c Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
d Officer — a bona fide officer of the taxpayer's organization.
e Full-Time Employee — a full-time employee of the taxpayer.
f Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
g Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
h Unenrolled Return Preparer — the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation — Insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | VA | [signature] | 11-15-2006 |
| | | | |
| | | | |

OMB No. 1513-0030 (08/31/2005)

**DEPARTMENT OF THE TREASURY**
**ALCOHOL AND TOBACCO TAX AND TRADE BUREAU (TTB)**

# CLAIM - ALCOHOL AND TOBACCO TAX AND TRADE BUREAU TAXES

*(File in duplicate with the Alcohol and Tobacco Tax and Trade Bureau)*

FOR TTB USE ONLY
CLAIM NUMBER

**PART I. TO BE FILLED IN BY CLAIMANT.**

1. THIS CLAIM IS FILED UNDER THE PROVISIONS OF 27 CFR *(Enter applicable section of regulations, such as 53, 270.283, 285.173. See* ***www.ttb.treas.gov*** *)*

27 CFR Part 179.81 and 27 CFR Part 179.191 and 26 CFR (Refund of taxes)

2.
☐ REMISSION OF TAX
☐ ALLOWANCE OF LOSS
☐ DRAWBACK-MNBP
☐ ALLOWANCE OF CREDIT FOR TAX
☐ ALLOWANCE OF TAX
☐ DRAWBACK-EXPORT
☐ ABATEMENT OF TAX
☒ REFUND OF TAX
☐ OTHER *(Specify)*

3. NAME AND ADDRESS OF CLAIMANT *(Telephone number and e-mail address optional)*

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758

4. EMPLOYER IDENTIFICATION NUMBER
59-3148857

5. PLANT, LICENSE OR PERMIT NUMBER
159103-07-5E-48218

6. KIND OF TAX
Excise tax on firearms transfer, 26USC5811

7. PERIOD, IF SPECIAL TAX OR MNBP *(mm/dd/yy)*
FROM TO

8. AMOUNT OF TAX CLAIMED
$200.00

9. DATE OF PAYMENT
May 14, 2004

10. BASIS OF CLAIM *(Give the detailed information required by the applicable regulations under which the claim is filed and any other facts which will tell the reviewing official of the exact basis for the claim. Please identify any documents or statements submitted in support of this claim.)*

On May 14, 2004, claimant duly filed ATF Form 4 (Application for Tax Paid Transfer and Registration of Firearm) with the Bureau of Alcohol, Tobacco and Firearms ("BATF"), and paid the $200.00 transfer tax stated thereon (See attached copy of ATF Form 4, incorporated by reference as Exhibit A). On June 2, 2004, BATF approved the transfer, as shown in Exhibit A.

The transfer was of an AR16 firearm with a new design. The technical details of the transferred firearm are described in a letter dated December 21, 2003 from Brian A. Blakley, d/b/a TCS, the manufacturer of the AR16. See Exhibit B, incorporated by reference. In Exhibit A, the firearm is described as a "machinegun," and this designation was specifically made "Subject to Firearms Tech. Branch Determination."

On September 16, 2004, the Chief, Firearms Technology Branch (FTB) responded to claimant's December 21, 2003 letter by concluding that the firearm was a "machinegun" as defined in the National Firearms Act, 26 U.S.C. Section 5845(b). Exhibit C. This letter states in pertinent part:

"Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun,'…."

Claimant expects and desires that this claim for refund be examined by the Bureau of Alcohol, Tobacco and Firearms, including additional review by the FTB. Claimant believes the firearm is not a "machinegun" but expects that BATF will reject the claim for refund based on FTB's determination, in its letter of September 16, 2004, that the firearm is a "machinegun."

However, the firearm in question is not in fact or in law a "machinegun" within the definitions of that term contained in Section 5845(b) of the National Firearms Act of 1934 (Internal Revenue Code Section 5845(b)), and Section 921(a)(23) of Title 18, United States Code. Accordingly, claimant is entitled to a refund of $200.00, since the transfer of the firearm was not taxable as it was not the transfer of a "machine gun" in fact or in law.

*(Attach letter size sheets if more space is required)*

**Under the penalties of perjury, I declare that I have examined this claim, including supporting documents and statements, and to the best of my knowledge and belief, it is true, correct and complete.**

11. SIGNATURE *(Type or print name and title under or beside signature)*
B. A. Blakley

12. DATE
11/01/04

TTB F 5620.8 (4/2004)

**PART II. ACTION BY THE ALCOHOL AND TOBACCO TAX AND TRADE BUREAU** *(To be returned to claimant)*

13. YOUR CLAIM FOR

☐ REMISSION OF TAX ☐ ALLOWANCE OF CREDIT FOR TAX ☐ ABATEMENT OF TAX
☐ ALLOWANCE OF LOSS ☐ ALLOWANCE OF TAX ☐ REFUND OF TAX
☐ DRAWBACK-MNBP ☐ DRAWBACK-EXPORT ☐ OTHER *(Specify)*

14. KIND OF TAX

☐ DISTILLED SPIRITS ☐ FIREARMS AND/OR AMMUNITION
☐ WINE ☐ TOBACCO PRODUCTS
☐ BEER ☐ SPECIAL TAX
☐ OTHER *(SPECIFY)*

15. TYPE OF CLAIM

☐ WITHDRAWN FROM MARKET ☐ OVERPAYMENT
☐ LOST/DESTROYED
☐ OTHER *(SPECIFY)* ______

16. HAS BEEN ACTED ON AS INDICATED BELOW:

17. AUTHORIZATION: 26 U.S.C. SECTION ______

| A. CLAIMED | | B. ADJUSTMENT, SEE BELOW | | C. APPROVED | |
|---|---|---|---|---|---|
| QUANTITY OR PERIOD *(Proof gallons, wine gallons, number)* (a) | AMOUNT (b) | QUANTITY OR PERIOD *(Proof gallons, wine gallons, number)* (c) | AMOUNT (d) | QUANTITY OR PERIOD *(Proof gallons, wine gallons, number)* (e) | AMOUNT (f) |
| | | | | | |

18. IF THIS IS A CLAIM FOR ALLOWANCE OF CREDIT, YOU MAY TAKE THE CREDIT ON TTB F 5000.24, EXCISE TAX RETURN OR TTB F 5000.25, EXCISE TAX RETURN - ALCOHOL AND TOBACCO *(PUERTO RICO)*. CREDIT FOR INTEREST **IS NOT** ALLOWABLE ON THIS CLAIM EXCEPT AS INDICATED IN ITEM 19 BELOW.

19. EXPLANATION OF ADJUSTMENT

NOTE: If your claim was for **abatement**, your account will be adjusted accordingly. Please promptly submit your payment for any amount disallowed in item 16B(d), plus any accrued interest, to TTB with a copy of the accompanying tax bill.

If your claim was for **refund**, your check will be forwarded under separate cover.

| 20. SIGNATURE AND TITLE OF APPROPRIATE TTB OFFICIAL | 21. TTB OFFICE | 22. DATE |
|---|---|---|
| | | |

**PAPERWORK REDUCTION ACT NOTICE**

This request is in accordance with the Paperwork Reduction Act of 1995. The information collection is used, along with other supporting documents, to obtain credit, remission and allowance of tax on taxable articles *(alcohol, beer, tobacco products and firearms and ammunition)* that have been lost and to obtain refund of overpaid taxes and abatement of overassessed taxes. This information is required to obtain a benefit by 26 U.S.C. 5008, 5705 and 6416.

The estimated average burden associated with this collection of information is 1 hour per respondent or recordkeeper, depending on individual circumstances. Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be addressed to Reports Management Officer, Regulations and Procedures Division, Alcohol and Tobacco Tax and Trade Bureau, Washington, DC 20220.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

T13801

OMB No. 1512-0027 (08/31/2004)

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

# APPLICATION FOR TAX PAID TRANSFER AND REGISTRATION OF FIREARM

ATF CONTROL NUMBER

SUBMIT IN DUPLICATE TO:

NATIONAL FIREARMS ACT BRANCH
BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS, P.O. BOX 73201
CHICAGO

1. TYPE (... e)
☐ $5...

Submit ... check ... approp... to the ... and F... this ap... acquir... ed "Natio... you. (... 3.)

TWO HUNDRED DOLLARS

2a. TRANSFEREE'S NAME AND ADDRESS *(Including tradename, if any) (See instruction 2)*

AWE Technology, Inc.
AWE
8440 Ulmerton Road, #522
Largo, FL 33771

2b. COUNTY
Pinellas

3a. TRANSFEROR'S NAME AND ADDRESS *(Including trade name, if any) (EXECUTORS: See instruction 2k)*

Brian Alan Blakley
TCS
P.O. Box 5765
Clearwater, FL 33758

3b. TRANSFEROR'S TELEPHONE NUMBER AND AREA CODE
(727) 560-3623

3c. IF APPLICABLE: DECEDENT'S NAME, ADDRESS, AND DATE OF DEATH

3d. NUMBER, STREET, CITY, STATE AND ZIP CODE OF RESIDENCE *(OR FIREARMS BUSINESS PREMISES)* IF DIFFERENT FROM ITEM 3a.
8440 Ulmerton Road, #522
Largo, FL 33771

The above-named and undersigned transferor hereby makes application as required by Section 5812 of the National Firearms Act to transfer and register the firearm described below to the transferee.

4. DESCRIPTION OF FIREARM *(Complete items a through h)*

| a. NAME AND ADDRESS OF MANUFACTURER AND/OR IMPORTER OF FIREARM | b. TYPE OF FIREARM *(See instruction 1c)* | c. CALIBER, GAUGE OR SIZE *(Specify)* | d. MODEL | LENGTH *(Inches)* e. OF BARREL | f. OVERALL | g. SERIAL NUMBER |
|---|---|---|---|---|---|---|
| TCS<br>8440 Ulmerton Road, #522<br>Largo, FL 33771 | Machine Gun* | 223 | AR16 | 16.25" | 34.375" | 0000001 |

h. ADDITIONAL DESCRIPTION OR DATA APPEARING ON FIREARM *(Attach additional sheet if necessary)*

*Subject to Firearms Tech. Branch Determination

5. TRANSFEREE'S FEDERAL FIREARMS LICENSE *(If any)*
*(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 6L | [illegible]8142 |

6. TRANSFEREE'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 06-1699988 | 02 Mfr. |

7. TRANSFEROR'S FEDERAL FIREARMS LICENSE *(If any)*
*(Give complete 15-digit number) (See instruction 2b)*

| First 6 digits | 2 digits | 2 digits | 5 digits |
|---|---|---|---|
| 159103 | 07 | 5E | 48218 |

8. TRANSFEROR'S SPECIAL (OCCUPATIONAL) TAX STATUS *(If any)*

| a. EMPLOYER IDENTIFICATION NUMBER | b. CLASS |
|---|---|
| 59-3148857 | 02 Mfr. |

RESTRICTED REGISTRATION - Possession ... in accordance with the provisions of Public Law 99-308

UNDER PENALTIES OF PERJURY, I DECLARE that I have examined this application, and to the best of my knowledge and belief it is true, correct and complete, and that the transfer of the described firearm to the transferee and receipt and possession of it by the transferee are not prohibited by the provisions of Chapter 44, Title 18, United States Code; Chapter 53, Title 26, United States Code; or Title VII of the Omnibus Crime Control and Safe Streets Act, as amended; or any provisions of State or local law.

9. CONSENT TO DISCLOSURE OF INFORMATION TO TRANSFEREE *(See instruction 8)*. I **DO** OR **DO NOT** *(circle one)* AUTHORIZE ATF TO PROVIDE INFORMATION RELATING TO THIS APPLICATION TO THE ABOVE-NAMED TRANSFEREE.

| 10. SIGNATURE OF TRANSFEROR *(Or authorized official)* | 11. NAME AND TITLE OF AUTHORIZED OFFICIAL *(Print or type)* | 12. DATE |
|---|---|---|
| [signature] | Brian A. Blakley, Owner | 5/14/2004 |

**THE SPACE BELOW IS FOR THE USE OF THE BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

BY AUTHORITY OF THE DIRECTOR, THIS APPLICATION HAS BEEN EXAMINED, AND THE TRANSFER AND REGISTRATION OF THE FIREARM DESCRIBED HEREIN AND THE INTERSTATE MOVEMENT OF THAT FIREARM, WHEN APPLICABLE, TO THE TRANSFEREE ARE:

STAMP DENOMINATION

☐ APPROVED *(with the following conditions, if any)*

☐ DISAPPROVED *(For the following reasons)*

SIGNATURE OF AUTHORIZED ATF OFFICIAL [signature]

DATE
JUN 02 2004

ATF F 4 (5320.4) (8-2001) PREVIOUS EDITIONS ARE OBSOLETE

Exhibit A

TECHCOM SYSTEMS
Ph 727-560-3623
P O Box 2878
Pinellas Park, Fl 33780-2878

73201 (5) 568

4188

63-466/631

DATE May 14, 2004

Pay to the order of Bureau of Alcohol Tobacco and Firearms $ 200.00

Two Hundred & zero/100 DOLLARS

AMSOUTH BANK
THE RELATIONSHIP PEOPLE

AR16

FOR Transfer Tax S/N: 0000001

⑈004188⑈ ⑆063104668⑆ 796537819⑈ ⑈0000020000⑈

**Brian A. Blakley, d/b/a TCS**
**P.O. Box 5765, Clearwater, FL 33758-5765**
**brian@blakley.info . (727) 560-3623**

12-21-2003

Sterling Nixon
Chief, Firearms Technology Branch
Bureau of Alcohol, Tobacco, Firearms, and Explosives
650 Massachusetts Avenue, Room 6450
Washington, DC 20226

Chief Nixon:

I am writing to request an opinion regarding the legal status of a new firearm design. The document that follows will describe the design of the proposed firearm and is accompanied by drawings to help clarify the meaning of the description.

I have been advised by competent legal counsel that the firearm design described herein is not a machine gun by any definition under Federal Law. Absent some communication from you to the contrary, or some communication which indicates that a period of time in excess of 90 days is required to review this sample, it would be my intent to manufacture the herein described firearm as a Title I firearm to be sold in the means and channels of commerce customary to such an item.

The proposed firearm is mechanically similar to an AR15 style firearm but is a new design that I will simply refer to as the *new firearm* throughout the remainder of this document. The similarity to an AR15 style firearm is mentioned to help one who is familiar with the AR15 to better understand the drawings.

The *new firearm* incorporates a means whereby the rearward movement of the bolt carrier (as a result of the firearm being discharged) causes the rotation of a cam that forces the rear of the trigger downward, thereby pivoting the trigger about it's axis, effectively moving the external portion of the trigger forward into the un-pulled position against the operator's trigger finger force. The cam is designed in such a way that after being rotated and forcing the trigger forward into the un-pulled position, the trigger is statically held there during the rearward and then forward travel of the bolt carrier. As the bolt carrier returns to battery, the trailing edge of the bolt carrier again engages the cam and rotates the cam in the opposite direction, which ceases the cams engagement with the trigger extension thereby allowing the operator to pull the trigger again. It is important to note that no discharge of the firearm occurs during the displacement of the trigger by the cam. In fact, the cam absolutely precludes discharge of the firearm during its action.

The primary benefit of the *new firearm* is that it is physically impossible to pull the trigger faster than it is mechanically safe to do so. Further, it is possible to pull the trigger as soon as it is mechanically safe to do so affording the operator an increased rate of fire while preserving the principle of "one round discharged per function of the trigger". With the AR15 rifle (from which the *new firearm* evolved) it is mechanically possible to pull the trigger before the point when the bolt carrier has reached battery but after the point when

Exhibit B

the disconnector would prevent the hammer from falling. In the best possible scenario this results in a light primer hit and a stoppage, in the worst-case scenario this could result in an out of battery discharge.

Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm*:

| | |
|---|---|
| Fig. 1 | Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun. |
| Fig. 2 | Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position. |
| Fig. 3 | Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger. |

Several components of the *new firearm* are essentially identical to an AR15 style firearm. The components that are newly designed are:

Lower receiver, hammer, trigger, disconnector, bolt carrier, trigger extension, and cam.

The principal differences between those components in an AR15 style firearm and those in the *new firearm* are:

| | |
|---|---|
| Lower receiver | Hole provided for pivot pin for cam. Hole is not in the same location as the auto-sear hole in an M16 receiver. It is positioned further forward so as to preclude use of M16 fire control components. It is also larger in diameter than an M16 auto-sear hole. |
| Hammer | The hammer is of a bobbed style similar to those found in some 9mm variants and as seen in "low mass" hammers. The bobbed hammer provides additional room in the rear of the lower receiver for the cam and trigger extension. The notch on the face of the hammer is retained in order to allow binding with the firing pin if the cam and disconnector were removed. |
| Trigger | The trigger has a disconnector spring pocket that is further forward than in an AR15 to accommodate the redesigned disconnector, which provides additional room in the rear of the receiver for the cam and trigger extension. |
| Disconnector | The disconnector has no "tail" at all compared to an AR15 disconnector, and has a spring notch that is further forward corresponding to the pocket in the trigger. The mechanical function of the disconnector is unchanged from the AR15. |
| Bolt Carrier | The bolt carrier possesses a "machined away" area under the firing pin collar as the AR15 does (to preclude a runaway if the disconnector and cam are removed), but has a trailing rear surface that extends further forward than most AR15 carriers, |

| | |
|---|---|
| | but not so far forward as an M16. The trailing rear surface of the bolt carrier in the *new firearm* is specifically designed not to be able to trip an M16 auto-sear, and to preserve the safety benefits of an exposed firing pin collar as in the AR15. |
| Trigger Extension | The trigger extension bridges the gap between the cam and the rear of the internal portion of the trigger. This allows the rotation of the cam to transmit displacing force to the trigger. |
| Cam | The cam is designed so as to be rotated toward the rear on rearward travel of the bolt carrier and in doing so forces the trigger forward by means of contact with the trigger extension. Subsequently, upon the bolt carrier returning to battery, the cam is rotated forward thereby ceasing its force against the trigger extension allowing the operator to pull the trigger again. |

Principle design goals were:

- To ensure that a single function of the trigger results in a single discharge of the firearm.
- Enhancement of the shooting experience and of the safety of the firearm.
- To make the *new firearm* at least as difficult to be illegally converted into a machine gun as it's AR15 predecessor, if not more difficult.

You are requested to confirm cousel's opinion that the *new firearm* is not legally a machine gun under Federal Law. Every effort has been expended in designing the new firearm to ensure that it does not run afoul of any Federal machine gun definitions. In the event that you find the enclosed firearm to be a machine gun, an executed ATF Form 2 is enclosed in a separate envelope for this firearm. If you determine the firearm is not a machine gun, please destroy the Form 2. If you determine the firearm is a machine gun, please forward the Form 2 to the NFA Branch for processing.

Thank you for your time in reviewing this request.

Sincerely,

Brian A. Blakley

Enclosure: AR16 firearm serial number ATF0001
Completed ATF 5320.2 (Form 2) in separate envelope
Figures 1 through 3

"AR16" TM (Trademark) Brian A. Blakley
Design of enclosed firearm is Patent Pending

FIG 1







FIG 2

FIG 3



U.S. Departmen[illegible]f Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

SEP 16 2004

903050:RV
3311/2004-273

www.atf.gov

Mr. Brian A. Blakely
P.O. Box 5765
Clearwater, FL 33758-3623

Dear Mr. Blakely:

This refers to your correspondence, including accompanying illustrations and other items, and firearm sample submitted to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your inquiry, you requested an evaluation of the design of this new firearm prior to manufacturing it. Specifically, you asked FTB to determine whether this firearm would be classified as a machinegun.

The sample you submitted is an AR 15 clone featuring a new design for the firing mechanism. This design would enable the firing mechanism to operate in the following manner as soon as the trigger is pulled:

- The hammer falls, firing a shot.
- The hammer is recocked when the bolt comes to the rear.
- When the bolt travels forward, it contacts the cam (new design: see illustration).
- The forward pressure of the bolt against the cam forces the trigger forward.
- The continuous steady pressure on the trigger from the trigger pull causes the trigger to travel rearward and releases the cocked hammer, enabling firing to continue.
- The weapon ceases firing when the firing finger is physically removed from the trigger. (If the steady pressure of the trigger pull is not released, the weapon will continue to fire until the magazine is empty or a malfunction occurs.)

As defined in the National Firearms Act (NFA), 26 U.S.C. Section 5845(b), the term "machinegun" designates, in part, "... any weapon which will or is designed or can be readily restored to fire more than one shot automatically without manual reloading by the single function of the trigger."

Based on a careful review of your sample and plans, including the illustrations, FTB has determined that the submitted firearm is a "machinegun," being capable of firing automatically with a single function of the trigger. Our Branch reached this finding because it is evident

Exhibit C

for Sterling Nixon
Chief, Firearms Technology Branch

Enclosure

FIG 3

FIG 3




Figures 1, 2, and 3 (attached) illustrate the following points in the firing sequence in the *new firearm:*

Fig. 1 Trigger has been pulled for the first time, the hammer has fallen, but the recoil cycle has not yet begun.

Fig. 2 Bolt carrier has moved nearly fully rearward, actuating the cam, and forcing the trigger to the un-pulled position.

Fig. 3 Bolt carrier has just reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger.

U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and Explosives

Washington, DC 20226

www.atf.gov

JUN 1 4 2005

CC-86,298 FE:TMH

Robert G. Nath, Esq.
7th floor
8280 Greensboro Drive
Mclean, Virginia 22102

Dear Mr. Nath:

This letter responds to the claim for refund submitted on behalf of your client Brian Alan Blakley on November 15, 2004. We apologize for the delay in responding.

Our records indicate that on December 21, 2003, Mr. Blakley submitted an "AR 16" firearm, serial number ATF 0000001, along with a completed Notice of Firearms Manufactured or Imported (Form 2) and accompanying illustrations for examination by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch. He indicated that registration on the Form 2 was "Subject to Firearms Tech. Branch Determination."

On May 14, 2004, Mr. Blakley filed a Form 4 (Application for Tax Paid Transfer and Registration of Firearm) and $200 with the NFA Branch to transfer and register the firearm to a third party. The transfer application was approved on June 2, 2004.

By letter dated September 16, 2004, ATF, through the Chief of the Firearms Technology Branch, classified the prototype firearm as a machinegun pursuant to the statutory definition in the National Firearms Act, 26 U.S.C. § 5845(b).

In your November 15, 2004 letter, you state that Mr. Blakley does not believe that the firearm, AR 16 0000001, is a machinegun and is seeking a refund of the $200 transfer tax. Your letter included a completed Form 5620.8, signed by Mr. Blakley, setting forth the same basis for the claim. By this letter, ATF is denying Mr. Blakley's claim for refund.

Title 18, section 922(o) of the United States Code generally prohibits the transfer or possession of a machinegun which was not lawfully possessed as of May 19, 1986. This prohibition does not apply to a transfer to or by, or possession by or under the authority of the United States, a State or a department, agency or political subdivision thereof. Section 479.105, 27 C.F.R. provides that the transfer and registration of a machinegun manufactured after May 19, 1986 will be approved for qualified dealers if it is established by specific information that governmental customers require a demonstration of the weapon or have a need for a particular model.

**EXHIBIT 5**

Robert G. Nath, Esq.

Likewise, the regulation provides that manufacturers may manufacture machineguns on or after May 19, 1986 for sale or distribution to any department or agency of the United States or any State or political subdivision thereof, or for use by dealers qualified under the NFA as sales samples and their subsequent transfer shall be conditioned upon and restricted to the sale or distribution of such weapons for the official use of Federal, State or local Governmental entities. See 27 C.F.R. § 479.105(c).

Mr. Blakley, as a Special Occupational Taxpayer, Class 2 manufacturer, made the "AR 16" at issue and properly registered it on an ATF Form 2. Mr. Blakley then paid the $200 transfer tax and filed an ATF Form 4 to effectuate the transfer of the firearm to another Special Occupational Taxpayer. The transfer of the firearm took place and the transfer application was approved in accordance with the law and regulations. Accordingly, the only basis for refunding the $200 transfer tax is your client's allegation that the item is not a "firearm" within the purview of the NFA.

Pursuant to 26 U.S.C. § 5845(b), the firearm provided to FTB on December 21, 2003, by Mr. Blakley was a machinegun and, for the reasons stated below, the classification issued on September 16, 2004, remains valid.

The firearm that was submitted was characterized as an AR 15 clone. Based on the information provided and our examination of the sample, the firearm is designed in such a manner that pressure on the trigger will allow a series of shots to be fired.

The essential features of the design are as follows:

- A hole has been drilled in both sides of the receiver to accommodate a new cam and pivot pin (the hole is not in the same position as the hole for an M-16 type automatic sear.)
- A cam pivot pin is mounted in the hole and the cam is mounted on the pin.
- The cam engages an extension mounted on the trigger.

Additional modifications have been made to the hammer, trigger, disconnector, and bolt carrier to accommodate the new parts.

Based on the description and illustrations provided the firing cycle is initiated by pulling the trigger. (Illustration provided as attachment).

- When the trigger is pulled the hammer is released.
- The hammer strikes the firing pin.

Robert G. Nath, Esquire

- The firing pin strikes the primer in the cartridge located in the chamber at the rear of the barrel.
- The cartridge discharges and the bullet is propelled through the barrel.
- The propellant gases from the barrel enter the gas tube, causing the bolt carrier to move to the rear.
- As the bolt carrier moves to the rear, the hammer is cocked and the empty cartridge case is extracted and ejected.
- As the bolt carrier moves to the rear, it engages the cam which forces that trigger forward. [1]
- As the bolt carrier moves forward a new cartridge is loaded from the magazine into the chamber and the hammer is held in the cocked position by the trigger.
- As the bolt closes, the cam is released and the trigger is no longer held in the forward position.
- Continued pressure on the trigger will allow the trigger to move rearward allowing the hammer to fall again and additional shots will be fired until the trigger is released or the magazine is empty.

As defined in the National Firearms Act (NFA), the term "machinegun" means any weapon which shoots, is designed to shoot or can readily be readily restored to shoot, automatically more than one shot without manual reloading, by the single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. 26 U.S.C. § 5845(b).

Our examination indicated that the submitted firearm shoots automatically and is designed to shoot automatically more than one shot without manual reloading by single function of the trigger. Mr. Blakley's explanation in the December 21, 2003 letter: Fig. *3 Bolt carrier has just*

[1] We note that ATF's September 16, 2004 letter incorrectly states: "when the bolt travels forward, it connects the cam." This statement erroneously referenced forward movement instead of rearward movement of the bolt. This transposition of terms does not impact the classification. The movement of the bolt has been correctly described in this letter.

Robert G. Nath, Esq.

*reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger*" is incorrect. The shooter does not pull and release the trigger. Pressure is applied on the trigger and the rifle fires; unless the pressure from the trigger finger is removed the rifle will continue to fire. Therefore, a single pull of the trigger by the user of the firearm results in the firing of more than one shot. The fact that operation of the firearm causes movement of the trigger is not relevant to this determination.

We understand that you may believe that because the trigger moves slightly forward, then back again in order for each round to be discharged that this firearm should not be classified as a machinegun. However, since the user of the firearm only needs to pull the trigger once to initiate the firing of multiple shots, the firearm fires automatically by single function of the trigger. Regardless of the fact that the cam causes the trigger to move back and forth with continuous finger pressure, it is still one single pull of the trigger by the user of the firearm which allows the rifle to continue to fire automatically. Upon removing pressure from the trigger the rifle ceases firing. Because multiple rounds are fired automatically without manual reloading by a single function of the trigger, the firearm is a machinegun. See Staples v. United States, 511 U.S. 600, 603 (1994) (automatic refers to a weapon that "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted"); See also JOHN QUICK, PH.D., DICTIONARY OF WEAPONS AND MILITARY TERMS 40 (McGraw-Hill 1973) (defining automatic fire as "continuous fire from an automatic gun, lasting until pressure on the trigger is released").

Additionally, the receiver has been physically altered to accept the automatic components of a machinegun. As altered, the firearm at issue has the frame or receiver of a machinegun and therefore, is a machinegun as defined in § 5845(b).

Furthermore, the components of this firearm are "a combination of parts designed and intended, for use in converting a weapon into a machinegun," thereby making the parts a machinegun as defined in § 5845(b).

Robert G. Nath, Esq.

Your claim for refund is hereby denied. If you have any questions regarding this determination, please contact Kenneth Houchens, Chief, National Firearms Act Branch at 202-927-8330.

Sincerely yours,

Audrey M. Stucko
Chief, Firearms and Explosives Services Division

Attachment

FIG 3

